UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA

IN RE:                                )
                                      )
    Angelina Girodes                  )    Case No. 06-80171C-13
                                      )
                                      )

## MEMORANDUM OPINION

This matter came on before the court for confirmation of the Debtor's Chapter 13 plan. The case is filed under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The Chapter 13 Trustee has objected to confirmation. The court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### Background

The Debtor, Angelina Girodes, filed for protection under Chapter 13 of the Bankruptcy Code, as amended by BAPCPA, on February 13, 2006. The Debtor filed schedules, including a statement of income (Schedule I), a statement of expenses (Schedule J), and a statement of current monthly income ("CMI") on Form B22C.  Schedule I reflects a present gross income of $2,047.18 per month, but a higher net income of $2,771.58 since the Debtor receives approximately $1,000 per month in assistance from family members. Schedule J reflects monthly expenses of $2,620.58, leaving excess income of $151.00 per month.  According to the Debtor's Form B22C, the Debtor has CMI of $2,661.00, with the "amounts reasonably necessary to be expended"[1] from Schedule J totaling $2,620.58, giving the Debtor "disposable income," as

---

[1]For below medium income debtors the amounts reasonably necessary are expenses that the court determines are reasonable and necessary for the maintenance and support of the debtor

defined by 11 U.S.C. § 1325(b)(2), of $40.42 per month.

The Debtor's current monthly income, as determined and defined by 11 U.S.C. § 101(10A)(A)(I), when annualized, is below the "median" family income for the state of North Carolina for the applicable family size.  Because the debtor had CMI which, when annualized, placed her below the median family income, she was not required to complete parts III, IV, V or VI of Form B22C, and her "disposable income" was determined under 11 U.S.C. § 1325(b)(2), without the requirement that she use only those "reasonably necessary expenses" that 11 U.S.C § 1325(b)(3) specifically designates. Schedule J lists the amounts of her estimated average monthly expenses, not including amounts being paid to (or on behalf of) the holders of allowed secured and/or priority claims through the plan.

The Debtor has no scheduled priority unsecured debts, $7,596.25 in scheduled general unsecured debts, and $2,300.00 in administrative unsecured debts, consisting of unpaid attorney's fees. The debtor is not eligible for a discharge under Chapter 7 because she filed a case under Chapter 7 on February 18, 2000 and subsequently received a discharge.

The plan proposed by the Debtor calls for payments of $151 per month for a period of 16 months, followed by payments of $0.00 per month for a period of 20 months.  The proposed plan would yield $2,416.00, which is sufficient only to pay remaining attorney's fees and the Trustee's commissions on disbursements. The Trustee has objected to confirmation on several grounds, including the failure by the Debtor to propose plan payments for the applicable

---

or the debtor's dependents. For above medium income debtors, expenses are determined in accordance with subparagraph (A) and (B) of § 707(b)(2).

commitment period.[2]  The Trustee contends that the plan must provide for $151.00 per month for a period of 36 months, unless the Debtor proposes to pay all allowed claims in full over a shorter period.  The Trustee has objected to neither the reasonableness of any expenses, nor the accuracy of any schedules, including the calculation of CMI on Form B22C.

## Discussion

Prior to the enactment of BAPCPA, a Chapter 13 plan could not provide for payments over a period of time that was longer than three years, unless the court, for cause, approved a longer period, but in no event could the court approve a period for longer than five years. 11 U.S.C. § 1322(d).  This section was deleted under BAPCPA and replaced with the following new provision.

> (d)(1) If the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--
>   (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>   (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>   (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4, the plan may not provide for payments over a period that is longer than 5 years.
> (2) If the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is less than--
>   (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>   (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the

---

[2]The Trustee objected that the plan was not proposed in good faith. The issue of good faith is not applicable in this context due to In re Barr, which held that the court had to determine whether debtor was committing sufficient income to her Chapter 13 plan by applying Internal Revenue Service standards through the B22C form, and cannot use the good faith statutory requirement to supplement this inquiry.  341 B.R. 181 (Bankr. M.D.N.C. 2006).

>highest median family income of the applicable State for a family of the same number or fewer individuals; or
>(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4, the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years.

11 U.S.C. § 1322

Therefore, under BAPCPA, if a debtor's income is above the state's median income, the debtor's plan may be no longer than five years; if a debtor's income is below the state's median income, the plan may be no longer than three years or five years with court approval. Before the enactment of BAPCPA, it was well-settled law that if a debtor wanted to obtain a Chapter 13 discharge, the debtor was required to devote his disposable income to a plan for a period of three years, unless the debtor paid all claims in full prior to the expiration of the three-year term. 11 U.S.C. § 1325(b)(1); see also In re Solomon, 67 F.3d 1128, 1131-32 (4th Cir. 1995); In re Kitson, 65 B.R. 615, 618 (Bankr. E.D.N.C. 1986); accord In re Keach, 243 B.R. 851, 857 (1st Cir. BAP 2000); In re Cavanaugh, 250 B.R. 107, 112 (9th Cir. BAP 2000); In re Turek, 346 B.R. 350 (Bankr. M.D. Pa. 2006); In re Caraballo Rivera, 328 B.R. 12, 15 (Bankr. D. P.R. 2005); In re Oimeon, 325 B.R. 809, 811 (Bankr. N.D. Iowa 2005); In re Jones, 301 B.R. 840, 844-45 (Bankr. E.D. Mich. 2003); In re Cardillo, 170 B.R. 490, 490-91 (Bankr. D. N.H. 1994).

BAPCPA also introduces a new concept: the applicable commitment period ("ACP"). Section 1325 (b)(1) states:

>If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
>(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

4

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C.A. § 1325(b)(1). The Debtor's ACP is defined in § 1325(4) as: (i) three years; or (ii) not less than five years, if the debtor is above median income. Section 1325(B) sets forth an exception, which states that the ACP may be less than three or five years if the plan provides for the payment in full of all allowed unsecured claims over a shorter period of time.

      The issue that this court must address is whether the ACP is a "temporal" requirement or a "monetary" requirement. If the ACP is a monetary requirement, the debtor's disposable income must be multiplied by the ACP, which would be 36 months for a below-median income debtor and 60 months for an above-median income debtor, to determine the fixed sum that the debtor must pay during the course of his plan. Under such an approach, there would be no requirement that the debtor remain in the plan for 36 or 60 months so long as the debtor pays the fixed sum in full. Alternatively, if the ACP is a temporal requirement, the debtor must devote his projected disposable income to payment of unsecured creditors over a specific period of time and may not exit the plan before the ACP has ended unless the debtor pays all unsecured creditors in full. Here, the Debtor argues that the ACP is a monetary requirement, while the Trustee argues that the ACP is a temporal requirement and the Debtor must stay in the plan for 36 months if she does not pay unsecured creditors in full in a shorter period of time.

      This court finds that the plain meaning of the statute supports a temporal interpretation. The use of the term "period" implies time period rather than amount. Temporal references are made throughout Chapter 13 of the Bankruptcy Code. For example, § 1322(a)(4) states:

> [A] plan may provide for less than full payment of all amounts owed for a

5

        claim entitled to priority under section 507(a)(1)(B) only if the plan
        provides that all of the debtor's projected disposable income for a 5-year
        period beginning on the date that the first payment is due under the plan
        will be applied to make payments under the plan.

Section 1322(d)(1) provides that if a debtor is above the median income, "the plan may not provide for payments over a period that is longer than 5 years." If a debtor is below the median income, "the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years." 11 U.S.C. § 1322(d)(2).

     Debtor's counsel asserts that BAPCPA no longer requires that a debtor must stay in a plan for a fixed duration; rather, the debtor must only pay into the plan the monetary amount required with reference to CMI as calculated on Form B22C less "amounts reasonably necessary to be expended." The Debtor asserts that while three and five years are the maximum periods a plan can run, there is no minimum period. This court disagrees and finds that the language of § 1325(b)(4) requires that a debtor remain in Chapter 13 for a period of three or five years,[3] unless the plan provides for payment in full of all allowed unsecured claims over a shorter period. See, e.g., In re Dew 344 B.R. 655, 661 (Bankr. N.D. Ala. 2006) ("The Court is convinced that the three years referred to in § 1325(b)(4)(A) represents a period of time over which Chapter 13 payments must be made, not a multiplier for use in calculating the total amount to be paid under the plan regardless of its term."); In re Schanuth 342 B.R. 601, 607 (Bankr. W.D. Mo. 2006) ("If Congress had intended for ACP to function as a multiplier, Congress surely could have described

---

[3] Pursuant to § 1325(b), only if an objection to confirmation is made by the trustee or the holder of an allowed unsecured claim is the requirement imposed that the plan provide for all the debtor's projected disposable income in the applicable commitment period. A court, absent an objection, has no authority to impose this requirement.

it as such. . ."); accord In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C 2006) ("The court finds that 'applicable commitment period' is a temporal requirement.").[4]

In Alexander, the court addressed the issue of whether a Chapter 13 plan may include an early termination provision that would take effect once the debtor has fully paid all allowed secured, priority, and administrative claims, as well as any required dividend to general unsecured creditors. 344 B.R. at 745. Pursuant to such a provision, a plan could terminate prior to the expiration of the ACP without paying general unsecured creditors in full. Id. The court found that a debtor with projected disposable income must make that disposable income available for unsecured creditors during the requisite ACP. Id. at 751.

In Schanuth, the debtors were below the medium income and proposed a plan in which they would make payments of $300 per month for 22 months and payments of $0 for 14 months. 342 B.R. at 605. These payments were sufficient to pay the mortgage arrearage claim, attorney's fees, and the trustee commission. Id. No monies would be distributed to unsecured creditors. Id. The court denied confirmation, finding that the plan was not feasible and that it proposed a plan length of less than 36 months in violation of § 1325(b)(4). Id. at 608. Just as in Schanuth, the Debtor's proposal here to pay $0 for 20 months is a violation of § 1325(b)(4) because the Debtor is not paying her monthly disposable income into her plan for three years.

The Trustee argues that, not only should the Debtor make payments for 36 months, but that the payment amount must be equal to the amount of excess income reflected on her Schedules I and J. In this case the Debtor has excess income under Schedules I and J of $151.00

---

[4]This court respectfully disagrees with the holding in Alexander that a debtor may get a discharge in less than 36 months if the debtor shows no disposable income as of the date of the petition. 344 B.R. at 753.

per month; therefore, the Trustee contends that the Debtor must make 36 payments of $151.00. Instead, the Debtor proposes to pay that sum for 16 months and pay $0 for a period of 20 months. The Trustee argues that "disposable income," as defined under CMI, has a different meaning from "projected disposable income," and the Debtor should be required to submit her actual disposable income of $151.00 to the plan rather than the artificial sum of $40.42. While the Trustee's argument is very logical, it is not what BAPCPA states.

Section 1325(b)(2) requires the court to look at CMI, not the amounts listed on Schedule I, to calculate disposable income. Section 101(10A) generally defines CMI as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case." Thus CMI is based on a historical average and may or may not reflect the financial condition of the debtor at the time of filing. Inasmuch as CMI is just a historical average, the Trustee asks that the court look to Schedules I and J to determine the "projected disposable income." While pre-BAPCPA, the court did look to Schedules I and J to determine the amount the debtor should commit to a plan, that analysis is not longer valid under BAPCPA. This court agrees with the court in <u>Alexander</u> that disposable income and projected disposable income are one and the same and have been defined by 11 U.S.C 1325(b)(2).[5]  <u>Alexander</u>, 344 B.R. at 749-50.

---

[5] As of the date of this opinion, it appears that the majority of courts addressing this issue have found that that "projected disposable income" is different from "disposable income."  <u>See</u> In re Hardacre, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006); <u>In re Risher</u>, 344 B.R. 833, 836 (Bankr. W.D. Ky. 2006); <u>In re Grady</u>, 343 B.R. 747, 750-51 (Bankr. N.D. Ga. 2006); <u>In re Kibbe</u>, 342 B.R. 411, 414 (Bankr. D. N.H. 2006); <u>In re Foster</u>, 2006 WL 2621080, No. 05-50448 HCD, at *4 (Bankr. N.D. Ind. Sept. 11, 2006).

The Debtor contends that her expenses should be calculated pursuant to Form B22C because if an "above median income debtor is allowed to use the IRS standards regardless of their relationship to his or her actual expenses, so should the below median income debtor.   To hold otherwise would be to punish the below median income debtor."  Accordingly, the Debtor argues that the "means test" is now the exclusive method by which the required payout to unsecured creditors through a Chapter 13 plan may be determined for all debtors, and that a debtor's actual income and expenses, at the time of filing and *throughout the pendency of the case*, are irrelevant. The Debtor contends that if there is no disposable income and the debtor pays priority and secured debt in a shorter period of time, the debtor should receive a discharge. In this case, using expense figures calculated pursuant to Form B22C, the Debtor's disposable income would in fact be a negative number.

While the Debtor might wish that there were no difference in how expenses are computed for above and below median income debtors, the language of the statute is quite clear in this regard.  Section 1325(b)(2) states that:

> (2) For the purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended--
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
> (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

Section 1325(b)(3) specifically defines what constitutes "amounts reasonably necessary to be expended" under paragraph (b)(2) for an above-median debtor. That definition has been incorporated into Form B22C. Section 1325(b)(3) does not apply to a below-median debtor. Therefore, reasonably necessary expenses for the below-median debtor are the expenses that the debtor has set forth on Schedule J, and are subject to review by the court. To arrive at a projected disposable income figure for a below-median debtor, the debtor's monthly expenses from Schedule J must be subtracted from CMI as calculated pursuant to Part I of Form B22C.

In this case, the Debtor's CMI less her Schedule J expenses results in the sum of $40.42 in excess income, which she must apply each month to the payment of unsecured debt.[6] However, this finding does not foreclose a later change in payments under the plan. While pre-confirmation modifications must comply with all of the requirements of § 1322, post-confirmation modifications only require compliance with §§ 1322(a), 1322(b), 1323(c) and 1325(a). Section 1322(d), which defines CMI, is expressly excluded from post-confirmation plan modifications. Similarly, § 1325(b), which again defines CMI, is expressly excluded from post-confirmation plan modifications. Additionally, if CMI were applicable to post-confirmation plan modifications, the only basis to increase or decrease payments would be a change in expenses. If CMI determines the plan payment for the life of the plan, there would be no reason for debtors to have to comply with the requirement to file tax returns with the trustee.[7]

---

[6] Schedules I and J are relevant only to determine feasibility. As a result, in this case, the net figure available from schedules I and J of $151.00 has no meaning for confirmation purposes other than to show that the plan is feasible.

[7] Section 521(f)(4) states that, in a case under Chapter 13, the debtor shall file with the court a copy of each amendment to any federal income tax return or transcript filed with the

CMI is not the starting point to determine plan payments for post-confirmation modifications. The court must determine post-confirmation plan payments based upon amended Schedules I and J and a debtor's ability to pay after deducting reasonable and necessary expenses. To give meaning to the post-confirmation plan modification section, debtors, trustees and the holders of allowed secured claims must be given the right to request modification for the full life of the plan, be it three or five years. Plans must be in existence for at least 36 months for below median income debtors and 60 months for above median income debtors, unless the debtors pay all unsecured claims in full in a shorter period of time.

Section 1306 provides property of the estate includes, in addition to the property specified in § 541, earnings from services performed by the debtor after the commencement of the case, but before the case is closed, dismissed, or converted. If the Debtor is only required to pay CMI, then this section, like the post-confirmation plan modification section, would have little or no meaning.     For the foregoing reasons, the court concludes that the Debtor's plan does not comply with the requirements of § 1325(b) and may not be confirmed. This court will enter an order denying confirmation of the plan contemporaneously with the filing of this memorandum opinion.

---

court and on the date that is either 90 days after the end of such tax year or l year after the date of the commencement of he case, whichever is later, if a plan is not confirmed before such later date; and annually after the plan is confirmed and until the case is closed.

## SERVICE LIST

**ALL PARTIES OF RECORD AS OF THE DATE OF THE ORDER SHALL BE SERVED BY THE BANKRUPTCY NOTICING CENTER**